ORIGINAL

1  VITALIY KAGANOVICH[1]
   A71-243-964
2  San Diego Detention Center (CCA)
   P.O. Box 439049
3  San Ysidro, CA 92143-9049

FILED

07 DEC 21  PM 3: 25

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITALIY KAGANOVICH, [A71-243-964]  Petitioner,  v.  MICHAEL CHERTOFF, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, MICHAEL MUKASEY, ATTORNEY GENERAL, ROBIN F. BAKER, DIRECTOR OF SAN DIEGO FIELD OFFICE, BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT, JOHN A. GARZON, OFFICER-IN-CHARGE,  Respondents. | Civil Action No.  '07 CV 2403 JAH AJB  NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF COUNSEL |

TO:   KAREN P. HEWITT, UNITED STATES ATTORNEY

PLEASE TAKE NOTICE that the petitioner, Vitaliy Kaganovich, will ask this Court to enter an order granting the motion listed below.

---

[1] The petitioner is filing the instant request for appointment of counsel with the assistance of Janet Tung and the Federal Defenders of San Diego, Inc., who drafted the instant motion.

1

## MOTION

The Petitioner, Vitaliy Kaganovich, pursuant to the United States Constitution, 18 U.S.C. § 3006A, and all other applicable statutes, case law and local rules, hereby moves this Court for an order appointing him counsel to assist him in his efforts to seek relief from his detention through a petition for a writ of habeas corpus under 28 U.S.C. § 2241.

This motion is based upon the instant notice of motion, the incorporated statement of facts and attached memorandum of points and authorities, and any and all other materials that may come to this Court's attention at the time of the hearing on these motions.

Respectfully submitted,

Dated: 12-14-07

_____
**VITALIY KAGANOVICH**
Petitioner

VITALIY KAGANOVICH
A71-243-964
San Diego Detention Center (CCA)
P.O. Box 439049
San Ysidro, CA 92143-9049

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITALIY KAGANOVICH, A71-243-964] <br><br> Petitioner, <br><br> v. <br><br> MICHAEL CHERTOFF, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, MICHAEL MUKASEY, ATTORNEY GENERAL, ROBIN F. BAKER, DIRECTOR OF SAN DIEGO FIELD OFFICE, BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT, JOHN A. GARZON, OFFICER-IN-CHARGE, <br><br> Respondents. | Civil Action No. <br><br><br> STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION |

I.

**STATEMENT OF FACTS**

The petitioner has been ordered removed from the United States by the respondents. However, because he cannot be removed to his country of origin or any alternate country, he is being held by respondents, based upon their misconstrual of their statutory authority to detain non-removable aliens indefinitely under 8 U.S.C. § 1231(a)(6).

1

Petitioner, a native of the Ukraine born in the former Soviet Union, entered the custody of Respondents over six months ago, on February 8, 2007, where he has remained since. He was ordered removed from the United States by an Immigration Judge on July 30, 2002; the Board of Immigration Appeals (BIA) affirmed the decision on January 15, 2004; and the Ninth Circuit denied his petition for review on December 12, 2006 and issued mandate on February 5, 2007, transferring jurisdiction back to the Respondents, over ten months ago. Petitioner cannot be removed to his country of origin or to an alternate country. He is being held in detention by Respondents based upon their misapplication of 8 U.S.C. § 1231(a)(6) to indefinitely detain non-removable aliens.

The petitioner was born in 1970 in Zhitomir, in what was then the U.S.S.R., which later became a part of the Ukraine. In 1994, he fled to the United States as a refugee. He subsequently became a legal permanent resident in 1995. Petitioner was ordered removed to the Ukraine by an immigration judge on July 30, 2002. Petitioner's order of removal became administratively final as of January 15, 2004, after the BIA dismissed his appeal. See 8 C.F.R. § 1241.1; see also 8 C.F.R. § 1240.15 (appeals to the BIA must be filed within 30 calendar days of the immigration judge's oral decision.). The Ninth Circuit's issuance of mandate on February 5, 2007, after it denied Petitioner's appeal on December 12, 2006, terminated the stay of removal that had been in effect during the pendency of his appeal. Petitioner's removal period commenced at least as of February 5, 2007. See 8 U.S.C. § 1231(a)(1)(B)(ii) ("The removal period begins on the latest of the following: . . . If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.").

On February 8, 2007, three days after the Ninth Circuit issued the mandate in his case, Petitioner was taken into the custody of immigration officials. While in custody, Mr. Kaganovich filed a motion to reopen the removal proceedings. At that time, the stay of removal he had previously obtained from the Ninth Circuit was no longer in effect, and Mr. Kaganovich did not seek an administrative stay of removal. Mr. Kaganovich's motion to reopen, which was denied on July 20, 2007, had no effect on the time period for removal. 8 C.F.R. § 241.4(b)(1) ("An alien who has filed a motion to reopen immigration proceedings for consideration of relief from removal . . . shall remain subject to the provisions of this section [requiring a custody determination after 90 days, and HQPDU review after 180 days] unless the motion to reopen is granted."). Mr. Kaganovich has been under a final order of removal since February 5, 2007, with no stay

of removal in place for the past ten months.

By the same token, the motion to reopen had no legal effect on the timing of Petitioner's 90-day custody review. See 8 C.F.R. §§ 241.4(b)(1) & (c). However, instead of conducting a custody review on May 9, 2007, 90 days after February 8, the U.S. Immigration and Customs Enforcement (ICE) waited until October 29, 2007, to conduct a custody review. It issued an order to continue detention on that date. See Appendix A, attached hereto. The order recommended detention on the sole grounds that "ICE . . . is in position to effect your removal pending the issuance of a travel document. Continued requests are being made to the Consulate of the Ukraine, as well as to ICE Headquarters in an effort to obtain a travel document." Id. The order made no indication of any response or progress made in ICE's efforts to obtain a travel document from the Ukrainian consulate, or any prediction of the time expected for a response. See id. Neither is there any explanation of what additional internal barriers to obtaining travel documents that Respondents face from "ICE Headquarters," or what measures, if any, were taken to overcome such barriers.

The order further stated that if Petitioner was not "released or removed from the United States by January 16, 2008, jurisdiction of the custody decision in your case will be transferred to the Headquarters Post Order Unit (HQPDU), 801 I St. NW, Washington, DC 20536. HQPDU will made a final determination regarding your custody." Id. To date, Petitioner has received no further communication regarding his custody status, and does not know whether HQPDU has made a determination of his status.

Over ten months have elapsed since Petitioner was under a final order of removal and subject to removal. At no time during these past ten months, or in the nearly four years since Petitioner's removal order was administratively final has the United States government received travel documents that would permit his repatriation to the Ukraine. See 8 U.S.C. § 1231(b)(2)(A), (D), (E)(iv)-(vi) (deportable alien must be removed first to country designated by him at deportation hearing, then to country of citizenship, then to listed countries, including the country of birth or that country having sovereignty over it at time of the alien's birth or at time of the deportation.). As the Ukrainian government has not issued travel documents in the ten months since Petitioner has been subject to a final order of removal, it is extremely unlikely that its government will issue travel documents to permit his removal there in the reasonably foreseeable future. Neither have Respondents obtained travel documents that would permit his removal to any other country. Thus, the United States has had ample opportunities to obtain travel documents, yet has failed to do so.

3

There is therefore no indication that the petitioner can removed to the Ukraine, or any other country, in the reasonably foreseeable future.

The respondents continue to hold the petitioner in custody, despite the fact that well over six months have elapsed. See Zadvydas v. Davis, 533 U.S. 678, 701 (2001) (requiring a court to evaluate whether the detention of a deportable alien "exceeds a period reasonably necessary to secure removal" and to release an alien when "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future," after the expiration of a six-month period following the issuance of a final order of deportation or removal); see also Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001) (declaring that "in Zadvydas, the Supreme Court read the statute to permit a 'presumptively reasonable' detention period of six months after a final order of removal–that is, three months after the statutory removal period has ended . . . .").

The petitioner has less than $150 in his account at the San Diego Detention Center. See Prison Certificate, Form CIV-67, Prison Certificate, attached hereto as Exhibit A. Since he is in custody, he does not have a source of income or employment. Petitioner was self-employed as a limo driver before he was taken into custody. His monthly earnings were approximately $2,000, which terminated in February 2007 due to his prolonged detention. He has approximately $90.00 is a checking account, has no savings or other financial accounts, and does not own an automobile. Although he and his wife share a home that they hold title to, Petitioner has only approximately $1,000 of equity in that home. As a result, he cannot afford to retain counsel.

Additionally, petitioner has had no formal legal education or training in the United States or anywhere else. See Declaration of Janet Tung in Support of the Petitioner's Motion, ¶ 16. Accordingly, the petitioner requests that this Court appoint the Federal Defenders of San Diego, Inc., to represent him in the instant habeas action. That office stands ready and able to assist the petitioner in this petition. See id.¶¶ 2-6.

## II.

## ARGUMENT

### THIS COURT SHOULD APPOINT COUNSEL FOR THE PETITIONER.

Habeas corpus proceedings "are of 'fundamental importance . . . in our constitutional scheme because

4

they directly protect our most valued rights.'" Brown v. Vasquez, 952 F.2d 1164, 1169 (9th Cir. 1991) (quoting Bounds v. Smith, 430 U.S. 817, 827 (1977)) (citations and internal quotations omitted). Consequently, federal law permits a district court to appoint counsel in a habeas proceeding under 28 U.S.C. § 2241 when the "interests of justice so require," if a petitioner has shown that he is unable to afford an attorney. 18 U.S.C. §3006A(a)(2)(B). To make this decision, this Court must "evaluate [1] the likelihood of success on the merits as well as [2] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983); accord Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997).

As is indicated below, the petitioner is highly likely to succeed on the merits of his claim, but will be unable to effectively articulate his claims through a pro se action, in light of his limited educational background. See Declaration of Janet Tung, ¶ 16. The petitioner cannot otherwise afford to retain counsel for the litigation of his petition for a writ of habeas corpus under 28 U.S.C. § 2241. Thus, the appointment of counsel is appropriate.[2]

**The Petitioner Is Highly Likely to Succeed on the Merits of His Claim.**

In Zadvydas, the Supreme Court held that 8 U.S.C. § 1231(a)(6) authorizes only a period of detention that is reasonably necessary to bring about an alien's removal from the United States, and "does not permit indefinite detention." Zadvydas, 533 U.S. at 689. If a deportable alien has not been released from immigration custody within a six-month period after the issuance of a final order of removal or deportation, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure

---

[2] In identical habeas proceedings, the Honorable Roger T. Benitez of the United States District Court for the Southern District of California has appointed the Federal Defenders of San Diego, Inc. as counsel of record for a similarly-situated petitioner. Casas-Castrillon v. Department of Homeland Security, Case No. 05CV1552-BEN (NLS) (S.D.Cal. Jan. 31, 2006). Likewise, the Honorable Irma E. Gonzalez appointed counsel in Hanna v. INS, Case No. 01CV0382-IEG (JFS) (S.D. Cal. Apr. 26, 2001). The Honorable Napoleon A. Jones has appointed the Federal Defenders of San Diego, Inc., based upon the petitioners' financial eligibility, their likelihood of success on the merits of the habeas petition, the complexity of the legal issues involved in the habeas action, the petitioners' lack of education and limited proficiency in English, and the need for assistance in obtaining discovery from federal immigration officials. See Chaydy v. INS, Case No. 00CV1687-J (JAH) (S.D. Cal. Sept. 1, 2000). Other judges in the United States District Court for the Southern District of California have made similar appointments. See Aphayavong v. INS, Case No. 00CV804-J (LAB) (S.D. Cal. June 22, 2000); see also Gebru v. INS, Case No. 01CV0625-JM (POR) (S.D. Cal. Jul. 11, 2001); Sahagian v. INS, Case No. 01CV066-BTM (RBB) (S.D. Cal. May 18, 2001); Cao v. INS, Case No. 00CV1991-L (JAH) (S.D. Cal. Oct. 10, 2000).


removal." Id. at 701; see also Ma, 257 F.3d at 1102 n.5 (declaring that "in Zadvydas, the Supreme Court read the statute to permit a 'presumptively reasonable' detention period of six months after a final order of removal -- that is, three months after the statutory removal period has ended") (citations omitted). If a deportable alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. Federal officials **must** release a deportable alien from custody under appropriate conditions of supervision when no "significant likelihood of removal [exists] in the reasonably foreseeable future." Id. at 699-700; see also Ma, 257 F.3d at 1100 (concluding that federal law mandates release of the alien under 8 U.S.C. § 1231(a)(3) when the alien "has already entered the United States and there is no reasonable likelihood that a foreign government will accept the alien's return in the reasonably foreseeable future . . . .").

The petitioner has been detained in the custody of respondents **since February 8, 2007**. In the time since his order of removal became final on February 5, 2007, the United States government has not received travel documents that would permit the petitioner's repatriation to the Ukraine or any alternate country. As the Ukrainian government has not issued travel documents in the ten months since Petitioner has been subject to a final order of removal, it is extremely unlikely that its government will issue travel documents to permit his removal there in the reasonably foreseeable future. Neither have Respondents obtained travel documents that would permit his removal to any other country. The 90-day removal period following the issuance of a final order of deportation ended on May 6, 2007.

The petitioner's detention beyond the presumptively reasonable detention period announced in Zadvydas violates §1231(a)(6), because it is not significantly likely that the petitioner can be removed to the Ukraine or an alternate country in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 700; see also Ma, 257 F.3d at 1112 (holding that section 1231 mandates the release of deportable aliens "at the end of the presumptively reasonable detention period" when "there is no repatriation agreement and no demonstration of a reasonable likelihood that one will be entered into in the near future"). Since there is no evidence that petitioner will indeed be removed in the reasonably foreseeable future, he is highly likely to succeed on the merits of his habeas petition. This circumstance, in conjunction with the following elements, suggests the need for the appointment of counsel.

B. **The Petitioner Cannot Adequately Articulate His Claims in the Absence of Counsel, in Light of the Complexity of the Legal Issues Involved in His Petition for Habeas Relief.**

To weigh the petitioner's ability to articulate his claims in the absence of counsel, a court must measure "the [petitioner]'s ability to articulate his claims against the relative complexity of the matter." Rand, 113 F.3d at 1525. In addition, counsel may be appointed during federal habeas proceedings if the appointment of an attorney is "necessary for the effective utilization of discovery procedures,. . . [or] if an evidentiary hearing is required." Weygandt, 718 F.2d at 954 (other internal citations omitted).[3]

As is indicated above, the instant case involves complex legal issues grounded in constitutional law, statutory interpretation, principles of jurisdiction, and administrative procedure. While the Supreme Court's opinion in Zadvydas has clarified many legal issues, several legal issues remain unresolved, including the determination of acceptable conditions of supervision or release. Moreover, the fact that respondents have not demonstrated full compliance with the Zadvydas mandate, as of the date of this motion, indicates that this litigation still remains necessary. See Declaration of Janet Tung, ¶¶ 9-12.

Since the petitioner is in the custody of federal immigration officials, moreover, an analysis of immigration law is required. The Ninth Circuit has declared that "'[w]ith only a small degree of hyperbole, the immigration laws have been deemed second only to the Internal Revenue Code in complexity.'" United States v. Ahumada-Aguilar, 295 F.3d 943, 950 (9th Cir. 2002) (citations and internal quotations omitted). In most cases involving an immigration law, "[a] lawyer is often the only person who could thread the labyrinth.'" Id. The absence of counsel during immigration proceedings will be prejudicial when an attorney could have assisted a litigant in seeking relief under applicable immigration laws, statutes, and cases. Id. at 951-52 (prohibiting the use of a deportation order during a subsequent prosecution for illegal re-entry because the absence of counsel affected the alien's ability to ascertain his eligibility for a waiver of deportation, the viability of a claim of United States citizenship, and his ability to obtain "special permission" to return to the United States after his deportation).

The petitioner's lack of expertise in legal issues warrants the appointment of counsel. The petitioner

---

[3] The Federal Defenders of San Diego, Inc. drafted the instant pleading, as well as the petition for a writ of habeas corpus. Thus, this Court cannot conclude, based upon these pleadings, that the petitioner has a firm grasp of the legal and factual issues involved in federal habeas proceedings.

has no post-secondary education in this country, and has never been trained in the practice of law. See Declaration of Janet Tung, ¶ 16. The absence of any formal legal background or training poses an obstacle to the petitioner's understanding of the issues involved in the instant proceedings, and warrants the appointment of counsel to help him obtain the relief requested in his habeas petition. See Declaration of Janet Tung, ¶ 16.

Additionally, the appointment of counsel may be appropriate during federal habeas proceedings if it is "necessary for the effective utilization of discovery procedures,...[or] if an evidentiary hearing is required." Weygandt, 718 F.2d at 954. The respondents have information and documents relevant to the petitioner's habeas petition, including information relating to his criminal history, his bail or parole history, his institutional history, the content of communications between federal immigration officials and the embassy of the petitioner's native country, and other documents relating to his detention by the Bureau of Immigration and Customs Enforcement.

The petitioner cannot effectively pursue and obtain discovery from respondents that he will need to adequately present his claims without the assistance of counsel, in light of his limited education and lack of familiarity with the legal procedures involved in requesting and obtaining discovery. Moreover, the petitioner cannot adequately review and evaluate his alien registration file (hereinafter "A-file") or evaluate relevant discovery regarding the likelihood of his removal from the United States without the aid of counsel. The need for discovery, too, suggests the need for the appointment of the Federal Defenders of San Diego, Inc. in the instant matter.

C.    **The Potential Need for an Evidentiary Hearing Warrants the Appointment of Counsel.**

The Government must proffer evidence "sufficient to rebut [the] showing by a deportable alien that "good reason [exists] to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Since the Government is required to present evidence to rebut the petitioner's contention that his removal to the Ukraine or an alternate country is not likely in the reasonably foreseeable future, an evidentiary hearing may be necessary to litigate disputed issues of fact. See Lawson v. Borg, 60 F.3d 608, 611 (9th Cir. 1995) (requiring an evidentiary hearing to litigate contested issues of fact during federal habeas proceedings); see also Weygandt, 718 F.2d at 954 (noting that the appointment of counsel may be appropriate during federal habeas proceedings "if an evidentiary hearing is

required"). The petitioner lacks a sufficient legal background to advocate for himself during a contested motion hearing. <u>See</u> Declaration of Janet Tung, ¶¶ 16. The appointment of counsel is necessary to ensure that the petitioner's rights are adequately protected in contested habeas proceedings.

D. **<u>The Prison Litigation Reform Act, 28 U.S.C. § 1915, Does Not Require the Petitioner to Pay Filing Fees to Proceed with His Request for Federal Habeas Relief.</u>**

The Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915, ordinarily requires a prisoner who "brings a civil action or files an appeal <u>in forma pauperis</u>" to "pay the full amount of a filing fee" and to cover subsequent court fees incurred during the litigation of the inmate's claim. 28 U.S.C. § 1915(b). In <u>Naddi v. Hill</u>, however, the Ninth Circuit concluded that "[a] review of the language and intent of the PLRA reveals that Congress was focused on prisoner civil rights and conditions cases, and did not intend to include habeas proceedings in the scope of the Act." 106 F.3d 275, 277 (9th Cir. 1997). Consequently, the Ninth Circuit declined to apply the *in forma pauperis* provisions of the PLRA to habeas petitioners, and to thereby require habeas petitioners to pay full filing fees and court costs.

The petitioner in the instant case is filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241, along with the instant motion. Since the petitioner is not filing another civil action for relief from the conditions of confinement, such as a civil suit under 42 U.S.C. § 1983, he is not required to pay the full amount and filing fees and court costs to pursue habeas relief. Therefore, this Court cannot dismiss his petition for relief, or otherwise penalize the petitioner, for his failure to pay the full amount of filing fees specified in 28 U.S.C. § 1915.

### III.
### CONCLUSION

For the foregoing reasons, the petitioner respectfully requests that this Court grant the motion for appointment of counsel in this habeas corpus action.

Respectfully submitted,

Dated: 12-14-07

_____
**VITALIY KAGANOVICH**
Petitioner

# EXHIBIT A

If you are a **prisoner** you <u>must</u> have an officer from your institution provide this official certificate as to the amount of money in your prison account. <u>There are no exceptions to this requirement</u>.

## PRISON CERTIFICATE
(Incarcerated applicants only)
(To be completed by the institution of incarceration)

I certify that the applicant __VITALIY  S.  KAGANOVICH__,
(NAME OF INMATE)

__A#71243964__,
(INMATE'S CDC NUMBER)

has the sum of $ __24.29__ on account to his/her credit at _____

__SDCF   CCA__.
(NAME OF INSTITUTION)

I further certify that the applicant has the following securities __—0—__

to his/her credit according to the records of the aforementioned institution. I further certify that **during the past six months** the applicant's *average monthly balance* was $ __132.04__,

and the *average monthly deposits* to the applicant's account was $ __6.03__.

<u>ALL PRISONERS **MUST** ATTACH A CERTIFIED COPY OF THEIR TRUST ACCOUNT STATEMENT SHOWING TRANSACTIONS FOR THE SIX-MONTH PERIOD IMMEDIATELY PRECEDING THE FILING OF THE COMPLAINT PER 28 U.S.C. § 1915(a)(2).</u>

__12/14/07__                         __[signature]__
DATE                                 SIGNATURE OF AUTHORIZED OFFICER OF INSTITUTION

__Richard C. Crouch__
OFFICER'S FULL NAME (PRINTED)

__Business Manager__
OFFICER'S TITLE/RANK

|     | Beginning Balance | | | | 0.00 | |
|-----|---------|----------|--------|---------------|--------|--------|
|     | DEPOSIT | WITHDRAW | TOTAL  | DAILY BALANCE | | |
| Oct |         |          |        |               |        |        |
| 22  |         |          | 0.00   | 0.00          |        |        |
| 23  | 280.24  |          | 280.24 | 280.24        |        |        |
| 24  |         | -45.16   | -45.16 | 235.08        |        |        |
| 25  | 0.85    |          | 0.85   | 235.93        |        |        |
| 26  |         |          | 0.00   | 235.93        |        |        |
| 27  |         |          | 0.00   | 235.93        |        |        |
| 28  |         |          | 0.00   | 235.93        |        |        |
| 29  | 6.00    |          | 6.00   | 241.93        |        |        |
| 30  |         |          | 0.00   | 241.93        |        |        |
| 31  |         |          | 0.00   | 241.93        |        |        |
|     | **287.09** | **-45.16** | | | **2,184.83** | 218.48 |
| Nov |         |          |        |               |        |        |
| 1   | 0.85    | -19.89   | -19.04 | 222.89        |        |        |
| 2   |         |          | 0.00   | 222.89        |        |        |
| 3   |         |          | 0.00   | 222.89        |        |        |
| 4   |         |          | 0.00   | 222.89        |        |        |
| 5   |         |          | 0.00   | 222.89        |        |        |
| 6   |         |          | 0.00   | 222.89        |        |        |
| 7   |         | -51.74   | -51.74 | 171.15        |        |        |
| 8   |         |          | 0.00   | 171.15        |        |        |
| 9   |         |          | 0.00   | 171.15        |        |        |
| 10  |         |          | 0.00   | 171.15        |        |        |
| 11  |         |          | 0.00   | 171.15        |        |        |
| 12  |         |          | 0.00   | 171.15        |        |        |
| 13  |         |          | 0.00   | 171.15        |        |        |
| 14  |         |          | 0.00   | 171.15        |        |        |
| 15  |         | -37.43   | -37.43 | 133.72        |        |        |
| 16  |         |          | 0.00   | 133.72        |        |        |
| 17  |         |          | 0.00   | 133.72        |        |        |
| 18  |         |          | 0.00   | 133.72        |        |        |
| 19  |         |          | 0.00   | 133.72        |        |        |
| 20  |         | -35.68   | -35.68 | 98.04         |        |        |
| 21  |         |          | 0.00   | 98.04         |        |        |
| 22  |         |          | 0.00   | 98.04         |        |        |
| 23  |         |          | 0.00   | 98.04         |        |        |
| 24  |         |          | 0.00   | 98.04         |        |        |
| 25  |         |          | 0.00   | 98.04         |        |        |
| 26  |         |          | 0.00   | 98.04         |        |        |
| 27  |         |          | 0.00   | 98.04         |        |        |
| 28  | 7.89    | -42.21   | -34.32 | 63.72         |        |        |
| 29  |         |          | 0.00   | 63.72         |        |        |
| 30  |         |          | 0.00   | 63.72         |        |        |
|     | **8.74** | **-186.95** | | | **4,350.62** | 145.02 |
| Dec |         |          |        |               |        |        |
| 1   |         |          | 0.00   | 63.72         |        |        |
| 2   |         |          | 0.00   | 63.72         |        |        |
| 3   |         |          | 0.00   | 63.72         |        |        |
| 4   |         |          | 0.00   | 63.72         |        |        |
| 5   |         | -34.15   | -34.15 | 29.57         |        |        |
| 6   |         |          | 0.00   | 29.57         |        |        |
| 7   |         |          | 0.00   | 29.57         |        |        |
| 8   |         |          | 0.00   | 29.57         |        |        |
| 9   |         |          | 0.00   | 29.57         |        |        |
| 10  | 30.00   |          | 30.00  | 59.57         |        |        |
| 11  |         |          | 0.00   | 59.57         |        |        |
| 12  |         | -35.28   | -35.28 | 24.29         |        |        |
| 13  |         |          | 0.00   | 24.29         |        |        |
| 14  |         |          | 0.00   | 24.29         |        |        |
|     | **30.00** | **-69.43** | | | **594.74** | 42.48 |

| Balance average | Days 54 | 7,130.19 **132.04** | Months | | |
|-----|---------|----------|--------|---|---|
| Deposit average | Days 54 | 325.83 **6.03** | Months | | |

If you are a **prisoner** you must have an officer from your institution provide this official certificate as to the amount of money in your prison account. <u>There are no exceptions to this requirement</u>.

## PRISON CERTIFICATE
(Incarcerated applicants only)
(To be completed by the institution of incarceration)

I certify that the applicant __VITALIY S. KAGANOVICH__,
(NAME OF INMATE)

A#71243964 ,
(INMATE'S CDC NUMBER)

has the sum of $__24.29__ on account to his/her credit at _____

__SDCF  CCA__.
(NAME OF INSTITUTION)

I further certify that the applicant has the following securities __—0—__

to his/her credit according to the records of the aforementioned institution. I further certify that **during the past six months** the applicant's *average monthly balance* was $ __132.04__,

and the *average monthly deposits* to the applicant's account was $ __6.03__.

<u>ALL PRISONERS **MUST** ATTACH A CERTIFIED COPY OF THEIR TRUST ACCOUNT STATEMENT SHOWING TRANSACTIONS FOR THE SIX-MONTH PERIOD IMMEDIATELY PRECEDING THE FILING OF THE COMPLAINT PER 28 U.S.C. § 1915(a)(2).</u>

__12/14/07__
DATE

_____
SIGNATURE OF AUTHORIZED OFFICER OF INSTITUTION

__Richard C. Crouch__
OFFICER'S FULL NAME (PRINTED)

__Business Manager__
OFFICER'S TITLE/RANK

CIV-67 (Rev. 9/97)                    -4-                    ::ODMA\PCDOCS\WORDPERFECT\22835\1

|   |   | Beginning Balance |   |   | 0.00 |   |
|---|---|---|---|---|---|---|
|   |   | DEPOSIT | WITHDRAW | TOTAL | DAILY BALANCE |   |
| Oct |   |   |   |   |   |   |
|   | 22 |   |   | 0.00 | 0.00 |   |
|   | 23 | 280.24 |   | 280.24 | 280.24 |   |
|   | 24 |   | -45.16 | -45.16 | 235.08 |   |
|   | 25 | 0.85 |   | 0.85 | 235.93 |   |
|   | 26 |   |   | 0.00 | 235.93 |   |
|   | 27 |   |   | 0.00 | 235.93 |   |
|   | 28 |   |   | 0.00 | 235.93 |   |
|   | 29 | 6.00 |   | 6.00 | 241.93 |   |
|   | 30 |   |   | 0.00 | 241.93 |   |
|   | 31 |   |   | 0.00 | 241.93 |   |
|   |   | **287.09** | **-45.16** |   | **2,184.83** | 218.48 |
| Nov |   |   |   |   |   |   |
|   | 1 | 0.85 | -19.89 | -19.04 | 222.89 |   |
|   | 2 |   |   | 0.00 | 222.89 |   |
|   | 3 |   |   | 0.00 | 222.89 |   |
|   | 4 |   |   | 0.00 | 222.89 |   |
|   | 5 |   |   | 0.00 | 222.89 |   |
|   | 6 |   |   | 0.00 | 222.89 |   |
|   | 7 |   | -51.74 | -51.74 | 171.15 |   |
|   | 8 |   |   | 0.00 | 171.15 |   |
|   | 9 |   |   | 0.00 | 171.15 |   |
|   | 10 |   |   | 0.00 | 171.15 |   |
|   | 11 |   |   | 0.00 | 171.15 |   |
|   | 12 |   |   | 0.00 | 171.15 |   |
|   | 13 |   |   | 0.00 | 171.15 |   |
|   | 14 |   |   | 0.00 | 171.15 |   |
|   | 15 |   | -37.43 | -37.43 | 133.72 |   |
|   | 16 |   |   | 0.00 | 133.72 |   |
|   | 17 |   |   | 0.00 | 133.72 |   |
|   | 18 |   |   | 0.00 | 133.72 |   |
|   | 19 |   |   | 0.00 | 133.72 |   |
|   | 20 |   | -35.68 | -35.68 | 98.04 |   |
|   | 21 |   |   | 0.00 | 98.04 |   |
|   | 22 |   |   | 0.00 | 98.04 |   |
|   | 23 |   |   | 0.00 | 98.04 |   |
|   | 24 |   |   | 0.00 | 98.04 |   |
|   | 25 |   |   | 0.00 | 98.04 |   |
|   | 26 |   |   | 0.00 | 98.04 |   |
|   | 27 |   |   | 0.00 | 98.04 |   |
|   | 28 | 7.89 | -42.21 | -34.32 | 63.72 |   |
|   | 29 |   |   | 0.00 | 63.72 |   |
|   | 30 |   |   | 0.00 | 63.72 |   |
|   |   | **8.74** | **-186.95** |   | **4,350.62** | 145.02 |
| Dec |   |   |   |   |   |   |
|   | 1 |   |   | 0.00 | 63.72 |   |
|   | 2 |   |   | 0.00 | 63.72 |   |
|   | 3 |   |   | 0.00 | 63.72 |   |
|   | 4 |   |   | 0.00 | 63.72 |   |
|   | 5 |   | -34.15 | -34.15 | 29.57 |   |
|   | 6 |   |   | 0.00 | 29.57 |   |
|   | 7 |   |   | 0.00 | 29.57 |   |
|   | 8 |   |   | 0.00 | 29.57 |   |
|   | 9 |   |   | 0.00 | 29.57 |   |
|   | 10 | 30.00 |   | 30.00 | 59.57 |   |
|   | 11 |   |   | 0.00 | 59.57 |   |
|   | 12 |   | -35.28 | -35.28 | 24.29 |   |
|   | 13 |   |   | 0.00 | 24.29 |   |
|   | 14 |   |   | 0.00 | 24.29 |   |
|   |   | **30.00** | **-69.43** |   | **594.74** | 42.48 |

| Balance average | Days 54 | 7,130.19 **132.04** | Months |
|---|---|---|---|
| Deposit average | Days 54 | 325.83 **6.03** | Months |