KAREN P. HEWITT
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California State Bar No. 94918
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7119
Facsimile:  (619) 557-5004

Attorneys for Respondents

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITALIY KAGANOVICH, | Case No. 07cv2403-JAH (AJB) |
| Petitioner, | |
| v. | RETURN IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS |
| MICHAEL CHERTOFF, Secretary of Homeland Security, et al., | |
| Respondents. | |

I

INTRODUCTION

Petitioner Kaganovich commenced these habeas proceedings prematurely to seek release from custody. His removal proceedings commenced seven years ago, but he has been in the custody of the Department of Homeland Security ("DHS") only since February 9, 2007. Kaganovich's removal was delayed by four months because he filed a motion to reopen with the Board of Immigration Appeals (BIA) and sought a stay of removal. It has been only since July 20, 2007, that DHS has been free to pursue efforts to repatriate Kaganovich to Ukraine. Under Zadvydas v. Davis, 533 U.S. 678 (2001), it is presumptively reasonable for DHS to detain Kaganovich for six months after his removal order becomes final. When he commenced these proceedings, Kaganovich had been in DHS custody for less than five months since his removal order had become final.

At any rate, DHS has submitted Kaganovich's Ukrainian birth certificate to the Ukraine consulate, and the consulate has not denied DHS's travel requests. Local efforts by DHS to obtain travel documents from the Ukraine consulate have been unsuccessful due to communication problems with the Ukraine consulate. Therefore, in January 2008, the matter was referred to DHS headquarters so that efforts could be made at a higher level of authority. Kaganovich has not sustained his burden to demonstrate that his repatriation is not significantly likely in the reasonably foreseeable future, and it would be premature to reach that conclusion before permitting DHS headquarters an opportunity to complete its diligent efforts to obtain travel documents from the Ukraine consulate.

## II

## STATEMENT OF FACTS

Petitioner Kaganovich is a native and citizen of Ukraine. [Exs. 1-2, 5, 7.][1] On April 5, 1994, he was paroled into the United States as a refugee, and on May 9, 1995, he adjusted to lawful permanent resident status. [Ex. 29.]

On February 24, 2001, he was arrested at the port of entry at San Ysidro, California, for attempted alien smuggling. [Exs. 1-4] On February 25, 2001, the Immigration and Naturalization Service ("INS") placed him in removal proceedings, charging him with inadmissibility under 8 U.S.C. § 1182(a)(6)(E)(i) [Exs. 5-6], and released him from custody pending his administrative removal proceedings. [Ex. 1.]

On July 30, 2002, the Immigration Judge ("IJ") ordered him removed to Ukraine. [Ex. 7.] On January 15, 2004, the Board of Immigration Appeals ("BIA") upheld the IJ's order. [Ex. 9.] On February 11, 2004, Kaganovich filed a petition for review and request for a stay of removal with the Ninth Circuit. Kaganovich v. Gonzales, No. 04-70625. On December 12, 2006, the Ninth Circuit denied the petition for review. [Exs. 10-18.]

///

---

[1] "Ex." refers to the accompanying true copy of selected documents from Kaganovich's DHS "A-File," No. A71 243 964.

1     About two months later, on February 9, 2007, DHS took Kaganovich into custody
2 and commenced efforts to obtain travel documents from the Ukraine consulate. [Exs. 22-
3 23, 31.] Meanwhile, on March 23, 2007, Kaganovich filed a motion to reopen and a
4 request for stay of removal with the BIA. [Ex. 24.] On July 20, 2007, the BIA denied
5 the motion. [Exs. 19-21.]
6     On October 15, 2007, Kaganovich was turned over to the custody of San Diego
7 Sheriff pursuant to a warrant. [Ex. 23.] On October 22, 2007, he was returned to DHS
8 custody. [Id.] On October 29, 2007, DHS conducted a custody review and determined
9 that removal was significantly likely within the reasonably foreseeable future. [Ex. 34.]
10     On December 21, 2007, Petitioner commenced the instant case, although six
11 months had not yet elapsed since his removal order had become final (on July 20, 2007).
12     DHS submitted Kaganovich's Ukrainian birth certification with its travel
13 document request to the Ukraine consulate, but there have been communication problems
14 with the consulate. [Ex. 34.] Because travel documents had not been obtained by
15 January 16, 2008 (six months from the date of the BIA's July 20, 2007 decision), local
16 DHS referred the case to headquarters to obtain travel documents from the Ukraine
17 consulate. [Id.]

18                                III

19                             ARGUMENT

20     Apart from the fact that Kaganovich commenced these proceedings prematurely,[2]
21 he has not sustained his burden to demonstrate that his repatriation is not significantly
22 likely in the reasonably foreseeable future. The Supreme Court held that DHS may
23 continue to detain an alien for six months beyond the end of the removal period, see 8
24 U.S.C. § 1231(a))(1), unless the "alien provides good reason to conclude there is no
25 significant likelihood of removal in the reasonably foreseeable future." Zadvydas at 701
26 ("This six-month presumption, of course, does not mean that every alien not removed

---

[2]   Kaganovich incorrectly asserts that he "did not seek an administrative stay of removal" when he brought his motion to reopen on March 23, 2007. [P&A at 2:23.] [See Ex. 24.] Accordingly, DHS refrained from efforts to remove him until July 20, 2007, only five months before Kaganovich commenced these proceedings.

must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future"). See also Pelich v. I.N.S., 329 F.3d 1057, 1059 (9th Cir. 2003) ("Zadvydas places the burden on the alien to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'") (quoting Zadvydas at 701).

Once the alien makes such a showing, the burden is on the Government to rebut the showing.

> [O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.

Zadvydas, 533 U.S. at 701.

Kaganovich does not satisfy his burden by simply pointing out that "well over six months have elapsed" and that he does not know whether DHS headquarters has made a determination regarding his custody status. [P&A at 3.] To the extent that the burden has shifted to DHS, DHS has submitted Kaganovich's Ukrainian birth certificate to the Ukraine consulate, and the Ukraine government has not denied DHS's requests for a travel document. It appears that delay in obtaining the travel documents has been due to communication problems with the Ukraine consulate. [Ex. 34.]

///
///
///

IV

<u>CONCLUSION</u>

For the reasons stated above, the Petition should be denied without prejudice. In sum, Kaganovich has not demonstrated "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." <u>Zadvydas v. Davis</u>, 533 U.S. at 701. At any rate, the Government has sufficiently rebutted Kaganovich's reasons for concluding that his removal is not significantly likely in the reasonably foreseeable future.

DATED: February 19, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ *Samuel W. Bettwy*

SAMUEL W. BETTWY
Assistant United States Attorney

Attorneys for Respondents